Good morning, ladies and gentlemen. Our first case for argument this morning is Steinhoff v. Malovrh. Mr. Worsham. Good morning, Your Honors, and may it please the Court, Carl Worsham of Perkins Coie, on behalf of Ryan Steinhoff. For over 30 years, this Court has consistently held that using significant force, including pushing, shoving, or otherwise assaulting a non-resisting or a passively resisting suspect constitutes excessive force under the Fourth Amendment. Mr. Steinhoff is the paradigmatic non-resisting compliant suspect. When half a dozen or so officers arrived at his trailer with only a search warrant, he complied with their orders to come out, to show his hands, and to turn around. And in an act that can only be reasonably understood as a sign of surrender, he put his hands up by his head. He had no weapons on him. The officers testified that they could see that his hands were empty and that they saw no indication that he might be concealing a weapon. Despite Mr. Steinhoff's compliance with the officers' commands, Defendants Kowalczyk and Malovrh tackled him to the ground. That is precisely the kind of significant force that this Court has held the Fourth Amendment to prohibit. The District Court's summary judgment rulings to the contrary must be reversed. I'm happy to start wherever the Court would like, including the questions you asked us to brief. But I defer to you on where you'd like me to begin. If there's nothing in particular, I'll start with kind of I think the kind of most simple straightforward resolution of this case, which is that the video evidence in this case, whether this Court agrees with Mr. Steinhoff, that it is dispositive, that it demonstrates that he complied, that he was not resisting, not attempting to flee, if this Court agrees with that, then it should reverse and grant Mr. Steinhoff's summary judgment motion against Officer Kowalczyk. I think it's hard to tell a lot conclusively from that video. It provides some evidence, but as you've probably viewed it quite a few times, it's dark, it goes in and out, it's shaky. I think it's hard to find anything conclusive. Yes, Your Honor. Even if you disagree and believe that the video is open to multiple interpretations, again, Mr. Steinhoff should win. The district court granted summary judgment to Defendants Molliver and Kowalczyk, even though it agreed that a reasonable jury could have found that he was completely compliant and obeyed all the commands that were given him. So I'm with Judge St. Eve. The video is helpful, but it's also limited. And the limitation may very well help Mr. Steinhoff, in my view, with respect to Officer Molliver. And the reason that I say that is the video is dark and grainy, and I can't make heads or tails out of what happens with respect to the role of Officer Molliver. But I think the dispute between the parties is whether Mr. Steinhoff getting hit in the side of the head with the M-16 was intentional conduct or accidental conduct. Is that kind of a fair distillation of where we're at? Well, so as to Officer Molliver, there is a dispute, and this court did ask us to brief that. But we think in this case, it actually isn't relevant whether that rifle strike was intentional or not, primarily because it was part of the takedown itself. And so under Torres, the Supreme Court said that in order for there to be a seizure, there has to be an intentional force used with the intent to restrain. With all respect, Mr. Worsham, that's where I think you're standing on your weaker ground. And the reason that I suggest that is I read the combination of cases like Michigan versus Summers, Mueller versus Mayniff, Bailey versus the United States, as the Supreme Court telling us that there's no Fourth Amendment violation with detaining individuals during the conduct of the execution of a search warrant for narcotics, especially where the circumstances may present a real risk of danger or risk of flight. And so those cases seem to apply here to the kind of takedown, if you will, the tackling and bringing your client to the ground and apprehending him. But I'm not sure that they speak to, what's his name, Molliver, Officer Molliver? Molliver, yes. Molliver with an M. Molliver. Okay. I don't know that it really speaks to his actions with respect to the M16 hitting your client in the side of the head. And in your briefs before us, you really seem to separate, that's why it surprises me a little bit, you seem to separate the gun hitting him in the head from the tackling. So I want to be clear that we think that the best reading of both this court's case law and the Supreme Court's case law is that where there has been a use of force with the intent to restrain that we have a Fourth Amendment seizure. And then the question is, if the rifle strike would have to be a separate use of force, and if it were intended to restrain separately, then, I mean, that's kind of what the district court held, was that he said, we have to look at these two separately. But I think just to be frank with the court, I think the best reading of that case law is that if it was used as part of the takedown, then all of that force needs to be used, considered together. Wasn't it litigated separately below? Wasn't it pled as a separate use of force and then litigated as a separate use of force and presented at the summary judgment as a separate use of force? It was not. So it was the initial complaint file that said excessive use of force against Officer Mulliver. And it listed all of the things, I mean, there's various paragraphs of the complaint that talk about this, but it said, taking him to the ground, hitting him with the rifle, et cetera, but it was all under one count. And then when it was argued at summary judgment, it was briefed initially even by defendants as a single claim of excessive force. And there's a line where they say, but even if it were considered separately, it fails because it wasn't intentional. And that's where the district court came in and said, well, I'm going to consider it separately and then adjudicated that separately. Though I will say, there's a little bit of ambiguity in the district court's ruling on page 20 of its opinion, it's also the appendix, page 20. There's a little bit of ambiguity there as to whether the court was ruling on the entire use of force claim or whether it was just ruling on this. I think the best reading is that it was addressing the entire takedown from Mulliver. But I think there's a little bit of ambiguity in the district court's opinion. But it was presented as a single claim initially. Yeah. I mean, it's all part of one course of conduct, that's for sure, and him getting tackled at the doorway. But as far as a Fourth Amendment claim for excessive force, I mean, he got hit hard in the side of the head with the M16. It cut his head open.  And, you know, that's the aspect of it that I don't think the video sheds much light on at all. I can't even see it happen. Yeah. I agree, Your Honor. I agree that the video doesn't shed a lot of light on that. I think if we look at the other evidence, as we've argued, there's substantial evidence in the record, more than enough for a reasonable jury to conclude that it was intentional if this court believes intentionality is required. If we look at just the hitting of the rifle, hitting his head with the rifle, as a separate act of force, what's your strongest argument that that was intentional? Because I think you agree your client can't shed any personal knowledge, right, given the circumstances and the fast nature of this. Yeah. Correct. So I would point to three different pieces of evidence. We list actually five in our briefs, but I'll give you three here. So first is that when Mr. Steinhoff complained of being hit in the head, just as in Miller, an officer on the scene said, we actually don't know who the officer was, but an officer on the scene didn't say, we didn't hit you in the head, or that didn't happen. Instead, the officer told him that he shouldn't have tried to flee. That's the same evidence that we have in Miller. But if... Yeah. But if Molliver didn't say that, and I'm not even sure we could draw a reasonable inference that it was Molliver based on the record. I think that's right. If one of the other officers said that, how much does that help you? Well, I think we have an officer who was on the scene, who was present, who witnessed the takedown. As you say, the video only has one perspective, but this will give us another perspective. I think, again, that coupled with other pieces of evidence is enough for a reasonable jury to conclude it was intentional. The next piece of evidence I would point to is that the strike to Steinhoff happened while he was standing. Again, their theory for how the rifle would have connected with his head, I mean, as an initial matter, Molliver argues that he wasn't involved in the takedown at all, and so the rifle strike happened on the ground. But you can hear the clink that happens while he's still standing. Mr. Steinhoff testified that he was hit while he was still standing. And just as a matter of physics, if Molliver didn't attempt to hit him with the rifle but just lunged at him, the rifle would have gone backward and down, not forward and up toward Mr. Steinhoff's head. And so that's another piece of evidence the jury could consider. And the final is just a general lack of credibility. The only evidence they point to is that Molliver said he didn't hit him in the head intentionally. But we have the police report, again, this is similar to Miller from this court, that the report said that Steinhoff moved his hands toward his jacket and attempted to flee. But we think, again, a reasonable jury could look at the evidence presented, both in the video and from the testimony, and conclude that that was false. And in fact, especially given that that report was given before Officer Molliver knew there was a body cam, they could just discredit him. And in addition to that, again, he denied any involvement, even though Officer Kowalczyk said that it was him that was involved. And so again, it's a simple matter of the jury could find that he's just not credible and therefore discredit his insistence that he wasn't involved and didn't intentionally hit him with the rifle. Was any of this evidence about the rifle hitting him in the head introduced in the excessive force case that went to trial? Not that I'm aware of. So that case was only about the excessive force that occurred after he was on the ground. Correct. With the use of the knee. But I didn't know if anything leading up to that was, if the video was shown, if there was any argument about how he got there. I don't know for sure, Your Honor. I would assume the video was shown. I would be very surprised if the video wasn't shown. But as far as the use of force, before he was standing, I don't believe any evidence was presented as to how that occurred, but I don't know for sure, Your Honor. I just want to go back to just briefly talk about Officer Kowalczyk. I know it seems like that's kind of a low-level claim. No, I mean, you can do what you can on that. I think it's your harder lift. But I guess what I would say is that even if he had a right to detain Mr. Steinhoff, I haven't looked closely at Michigan v. Summers, et cetera, but I would assume that in those cases there was a right to arrest the individual here. There is simply a search warrant. Wasn't he arrested at the scene for the drugs? He was not. They actually found no drugs on him or in the trailer. Was he arrested at the scene? He was, but they pointed to his resisting arrest once he was on the ground. So that happened after he was tackled. Yeah, those cases are about authority to detain during the execution of a search warrant. You know, there are situations where people, police show up with a search warrant and they want to hit the road, and the police say, no, you're not going anywhere. And I think they were absolutely entitled to make sure he stayed there, but I think at least there's a reasonable jury could find that he was not attempting to flee. And I think we have other cases that are- You're not disputing the detention, are you? You're just arguing excessive force was used. Correct, yes. So they were free to make sure he stayed there, but they had no basis to tackle him to the ground. Notably, they never said freeze or stop. They never give any indication that they thought he was trying to flee other than after the fact saying that they thought he might flee, that he had an opportunity to flee, and that simply is not enough. I'd like to reserve the rest of my time, if I may. Thank you, Your Honor. Is there any counsel? Ms. Mills. Good morning, Your Honor. This may please the court. In this case, the claim against Mr. Malover essentially boils down to a claim that the fact that this gentleman's ear was injured should give rise to the inference that Malover's actions were intentional. You don't dispute that he was injured because he was hit in the head with a rifle, do you? No. We don't have any basis to- Ultimately, I think that is kind of the crucial issue that the record is empty as to how this happened. So I thought you said you don't dispute that. I don't dispute it because it's the only reasonable conclusion. Something hit this gentleman. The things that were happening in this sort of milieu of chaos are officers getting him to the ground. There's people with rifles, one loosely slung. It makes sense that that's what happened, and so we're not disputing that. There would be really no basis. However, everything else is essentially an empty record, and in this case, when you look at the evidence that Mr. Steinhoff has pointed to to try to create this inference of intentionality on Malover's part, there still has to be those building blocks that connect something that Malover did to intent, and there simply isn't. Well, what about- I mean, I really appreciate your candor. I think it's very hard to tell what happened here. Right. It's very hard, and it all happens in a split second, and you can watch the video 50 times and watch it millisecond by millisecond, but that's not how it played out at the doorway of the trailer, and we do know he got clocked in the head hard with an M16, and I don't know what evidence could he come forward with on intentionality. What would you expect him to say other than, look, I walked out of the trailer, I got tackled, I got hit in the head with a gun, I mean, it hit me hard, cut my head open. What else could he say on intentionality? I agree that it is a difficult position for a plaintiff, but that doesn't mean that they don't still need to come forward with that evidence. Simply because it happened cannot be, as a matter of course, enough to get it to a jury. So in this case, we don't see the type of- Are we sure we even know what happened? That's what kind of throws me off about it, in terms of, I sure think he got hit in the head with the side of the gun, because I don't know what else would have caused that kind of injury. Well, he testified that he did see the butt of a rifle hitting him, and so I don't think that there would be any realistic argument on our part. So it's his word against Officer Malover's word about intentionality. Officer Malover said it was an accident, Mr. Steinhoff said I think it was intentional. And ultimately, what they had in Miller was the statement, as opposing counsel pointed out, well, don't take off. That was said by Officer Gonzalez, the gentleman who landed on Miller's head. Do we know that, though? I didn't think there was any evidence in the record as to which officer said, well, don't take off. No, I was talking about the Miller case. So the types of evidence that allowed that inference about intentionality to go forward to a jury was the statement and being able to attribute it to the specific individual against whom the excessive force was being alleged. So what about the statement here? We do not know who said that. And there is obviously the inconclusive body-worn camera footage. I know that— If Malover had said that, would that be enough to create an issue of fact? I don't see it as enough, standing alone, because I think that a lot of things are said in a scuffle, and that certainly isn't enough alone to give rise to this idea that, well, I'm commenting and saying that because I did take the action intentionally. You can comment on anybody's actions. But the other things in this case that I think distinguish it from Miller and show there isn't enough of those building blocks, in Miller, Gonzalez, who jumped over the fence, the plaintiff had already been on the ground for 10 seconds, not moving, when he jumped over the fence. And so that is not the type of situation where you get that sort of, we've got a split-second judgment, law enforcement has to make these tough calls, everything's rapidly evolving. That's different from our case, where this was rapidly evolving. We don't have that type of static situation where it's not as if Malover saw Steinhoff on the ground, waited 10 seconds, and then decided to jump in and tackle, and then suddenly we've got this question about intent. We also, the dispute about what was in a report versus the body-worn camera footage is inconsequential at best. It's essentially semantics. It's hands up versus show us your hands. This is different from Miller, because in Miller, the difference was saying, I jumped over the fence, I landed and slipped, versus I fell off the fence. There was difference in the intent to actually jump the fence, and that was the crux of the issue at Miller. Were you intentionally jumping the fence? Yes. But why were you doing that? Because that's where it all kind of comes to a head. If he was simply jumping the fence to land on the ground, okay, you ended up on this guy accidentally. That's not a Fourth Amendment violation. But if you were jumping the fence to tackle him, well, then we have a question of whether it was an intentional landing on this gentleman's head, and that would be enough to get it to the next stage of let's have a trial on intent. But we don't have any of those building blocks, whether one or two or three, whatever the quantum is. We don't have any in this case. None of the situation that you see in Miller that allowed it to go forward and look at intentionality, none of that, no similar evidence exists in this case. So is your point there, Ms. Mills, that look, this is so split second, it's so fast, and the only fair inference from all of this is that the M-16 hitting him in the head is accidental unless he comes forward with something else, just because of the just almost instant, very fast nature of what happened. Is that the main point? That is the main point, and the point also that the only evidence in the record is that no one, and again, I understand that as a plaintiff, they don't want to just simply accept without some challenge the fact that it's all law enforcement saying this, but every officer on the scene said they didn't see anybody hit Steinhoff with a rifle, and they didn't hit him with a rifle. So the only evidence in the record is Mr. Steinhoff saying he saw the butt of a gun hit him, and that's it. And it's our position that simply being hit with the butt of a gun when all the other evidence is that it was not intentional is not enough to get him past that threshold on the Fourth Amendment. What's the nature of the injury weigh in, I mean, not just, I mean, it's not like a tap on the head, I mean, it cut his head open. I don't, you know, I think that the butt of a gun is a pretty sharp thing, you know, wood, they're heavy, and I think this kind of goes to what the district court was saying that whether it was wise for Detective Malover to be involved with a rifle slung over his shoulder, that's up for debate, and maybe that was negligent. How much does an M16 weigh? How much does an M16 weigh? I've never held one, and I don't know. I think it's very light. The design of the gun is to be light, and a light thing inflicts a smaller injury unless used with force. That's what Judge Scudder is asking, can't you infer from the nature of the injury that substantial force was used? It's not enough to say the gun was heavy. I would say, I would counter that with pointing out that it was his ear that was cut. Ears bleed very easily, very easily. And so it's, you know, I think it's one of those things where it is a little bit up for debate, but there's no conclusive evidence. See, I think the thing the dialogue is exposing, or at least a benefit from your reaction to it is, I don't think you know any more than I know what happened, and I don't think Mr. Worsham knows any more than the two of us know about what happened. And that's why I think, why don't we just let a jury sort it out, with respect to Malover. Then I think we are purely in the realm of speculation and conjecture. It's the plaintiff's burden to come forth with evidence beyond just speculation, showing. That's the part that I don't know what he could do other than say, I got clocked pretty hard in the side of the head with an M16. Hard enough that I think it's intentional. The guy never told me it was intentional, so I'm not going to have direct evidence. I don't know what else you want me to say. And I think that... I just wonder if it's a burden that could never be carried. Well, Miller certainly carried it. Those are, Miller and the case where the guy's in the swimming pool, I mean, those are situations where there's quite a bit of delay that way. It's a different kind of fact pattern. And I agree. Those are situations where there was enough evidence to get it beyond simply guesswork. And the whole purpose of getting to a jury is not allowing them to speculate. To show them that there's some basis for your claim that this was intentional. And here there is none. There has to be something, some quantum of evidence that would get over that threshold and give the plaintiff the benefit of some inference in their favor. And there isn't. And I understand that's a little bit difficult because usually we have something. We have some point that we can kind of pull apart and say, well, this could be interpreted. And I think maybe giving the benefit of the doubt. Would your position be the exact same if the evidence, and thank God it doesn't show this, suppose the evidence showed his skull was cracked? I think that would potentially be a different story. Because when you've got cracked bone, as opposed to an ear that they bleed a lot and it's certainly a more severe injury, I do think that that would be something where there would be a lot of questions about how that could possibly happen in that type of a scuffle. How a skull could be cracked when you're just taking somebody to the ground. So to acknowledge that is to say that indirect circumstantial evidence could create an inference of intentional conduct. Certainly. And it's just your point then has to be, this doesn't. Certainly. Yes. I think that there are situations one could imagine where the type of injury that occurred, the statements that were said after or even during. How do we articulate that test? Where do you draw the line between a cracked skull and an ear bleeding that required stitches? That's a tough call. I don't have a specific answer for that. If it were me, I would say, you know, we're talking about broken bones. We're talking about, you know, when you have a cut and you've got some bruises, that's sort of a different quantum than broken bones and, you know, severe injuries that could be life threatening. But obviously we don't want to have to go to the point where we're saying, well, geez, you've got to have a life threatening injury before you can move to the next stage. But in these cases, you know, again, you have to have something, some statement, some, even if it's circumstantial and the timing of things. And in this case, everything points to the opposite. Do you know if any of the evidence regarding the rifle hitting him in the head was presented to the jury in the knee on the neck case? I took this case over at the appellate level, but I believe the video was shown. I believe the video was shown to the jury from start to finish. I don't think it's particularly conclusive. I would note that to the extent that Mr. Steinhoff is now saying that he was struck in the head while he was standing, I would argue that the one part of the video that actually is somewhat clear is the point where he's standing and coming out of the trailer because the lights are shining directly on him. And if it happened while he was standing, we would have seen it. And you don't see it. That is the what about the clink that we hear? You know, he's still sort of standing. He was still sort of standing. But you don't see what caused the clink. And couldn't we draw a reasonable inference from that? I think the only reasonable inference from it is that he was hit in the head with something. And that's something we don't dispute because we really can't. I think it would be foolish for us to say, oh, no, you weren't hit in the head. But suddenly you need stitches on your ear. I think it is reasonable for us to assume that he was hit in the head with the butt of an M-16. But again, there's two people there with M-16s assisting, Ramberg and Malover. And again, everybody who participated said, well, I didn't see him get struck by anybody else. And I didn't strike him with anybody else. I think the only reasonable inference on the record is that because we know it was slung on his shoulder, and there's no evidence that it was ever taken off of his shoulder, that it was simply I don't know about the physics. And as somebody who has to carry a big bag, they swing every direction. So I don't know that saying that it could only swing backwards is correct. And I think you'd probably need an expert to opine on that, accident reconstructionist or something of that nature. But I think this is a case where you have an empty record. The only evidence in it that would allow it to go on to a jury is simply the plaintiff's belief, his personal belief. And if we allow cases to go forward simply on a plaintiff's belief that something was intentional, it puts defendants in this position of having to defend against a claim that there's no other evidence. They have nothing that they can point to other than their own credibility. And credibility, well, I'm saying it didn't happen and you're saying it did, is not enough. This is an unusual case that you can't tell who did. I'm usually who the actors are not in question. Right. Which makes this challenging for the plaintiff and the plaintiff. I think at its very core, this is so speculative and so unclear that it is simply not enough to get past that threshold of saying there's enough to get to a jury to show personal involvement and to find, based on evidence, liability. And I see I'm out of time. Thank you very much. Anything further, Mr. Warsham? Just a few quick points, Your Honors. Evidence of the summary judgment stage is taken in the light most favorable to the non-movement here. That's Mr. Steinhoff. He testified that he was hit while he was standing, and that's conclusive of whether he was hit while he was standing in terms of summary judgment. That should be enough for that purpose. They say over and over again, the officers never said that he was hit with a rifle, but also can see that he was hit with a rifle. And so at least some officers must not have seen what happened. So it goes to the jury. But we actually do have an officer who seemed to have indicated, at least implicitly, that he did see what happened when he said you shouldn't have tried to flee. So, again, under Miller, a jury can use that evidence as going to this question. That whether he was on the ground for 10 seconds or two seconds is irrelevant for purposes of intentionality. They point to that from Miller. But that goes to the merits of whether or not this was excessive force or not. And finally, just to be compliant and then to end up with nine stitches is itself, I think, a strong indication that something went while we arrived here. Mr. Steinhoff did everything that was asked of him, and he still ended up with nine stitches. Just two final points. Again, we still think that the harm you're viewing from the rifle strike should be considered with the takedown. And so even if you believe that Officer Kowalczyk should somehow be off the hook for the takedown generally, this takedown that Molliver engaged in should not be. It should go to a jury. He intentionally took Steinhoff to the ground. He did it by using intentional force, meaning he intentionally put him to the ground. And whether he intended the rifle strike or not, the rest of his force was intentional. And that rifle strike should be considered in the totality of the circumstances inquiry for excessive force claim. And then just a final point, just one last stab at Kowalczyk here. I just want to say really quickly that a clash is a good example. Clash VBD is a good example of what should have happened here instead of tackling Mr. Steinhoff to the ground. Especially when I think that from the video and the testimony evidence from the officers, that a reasonable jury could conclude that he was completely compliant, wasn't trying to flee. The thing they should have done is what the officers did in clash. In clash, they had a suspect they believed had a gun. They had him turn around and walk backward toward them. They searched him and then arrested him. They did not tackle him to the ground. And so it's more like a Terry stop. We have we have a law of detention in this country for what you do when you believe someone is dangerous. You want to detain them. Right. You can stop them without tackling them to the ground. And so to counsel. Mr. Worsham, the court appreciates your willingness and that of your law firm to accept the appointment and your assistance to the court as well as your client. The case is taken under advisement.